UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| FRED HARBISON, | ) | |
| Plaintiff, | ) ) ) | |
| vs. | ) | No. 4:13-CV-1138-SPM |
| RICH GULLET AND SONS, INC., et al, | ) ) ) | |
| Defendants. | ) | |

## MEMORANDUM AND ORDER

Plaintiff Fred Harbison ("Plaintiff") has filed motions asking this Court to strike, dismiss, or order a separate trial of all cross claims and/or third party claims asserted by other parties against his employer, McCann Concrete Products ("McCann"). (Docs. 122-1, 122-2, and 126-1). Plaintiff contends the third party claims against McCann should be stricken, dismissed, or separately tried because they are barred by Missouri's workers' compensation law and because their inclusion in this case will unnecessarily complicate and delay the disposition of Plaintiff's claims. For the following reasons, Plaintiff's motions will be denied.

### I.  BACKGROUND

Plaintiff is a citizen of Illinois and is employed by McCann, also a citizen of Illinois. On October 20, 2011, Plaintiff was delivering a heavy piece of concrete vault to a substation owned by Union Electric Company ("Ameren UE") in St. Louis County, Missouri, when the concrete vault section fell on his truck during the unloading process, causing him injury. Plaintiff has asserted claims of negligence against Rich Gullet and Sons, Inc. ("Gullet"), the company responsible for unloading the vault, and McGrath & Associates, Inc. ("McGrath"), the general contractor for Ameren UE. Plaintiff also filed a workers' compensation claim against McCann

1

under the Illinois Workers' Compensation Act, 820 ILCS 305/1 *et seq.* (Doc. 109, ¶ 29); that claim is not a part of this suit.[1]

With leave of court, Defendants Gullet and McGrath asserted third party claims for contribution and indemnity against McCann and McDonough-Whitlow, P.C. ("McDonough"), the company that produced engineering drawings and instructions for use in lifting of the vault. McDonough, with leave of court, asserted claims for contribution and indemnity against Gullet, McGrath, McCann, and Ameren UE. Although Gullet, McDonough, and McGrath had already been granted leave to assert their respective third party claims, on January 13, 2015, Plaintiff filed a written objection to Gullet's and McDonough's third party claims. *See* Doc. Nos. 122-1 and 122-2. In the alternative, Plaintiff moved for an order striking, dismissing, or ordering a separate trial of Gullet's and McDonough's third party claims against McCann. *See id.* On January 16, 2015, Plaintiff filed a similar objection and similar motions to strike, dismiss, or separately try McGrath's third party claims against McCann. *See* Doc. No. 126-1. The Court will construe Plaintiff's objections and motions as a motion to strike and/or dismiss or, in the alternative, to sever and separately try the third party claims of Gullet, McGrath, and McDonough against McCann.

## II. DISCUSSION

### A. Motions to Strike and Dismiss

Plaintiff argues that the Court should (1) dismiss the third party claims against McCann under Rule 12(b)(6) of the Federal Rules of Civil Procedure, and (2) strike the claims under Rule 12(f), because Missouri's Workers' Compensation Law immunizes McCann from liability for third-party contribution and indemnity. In response, Gullet, McGrath and McDonough argue that

---

[1] Plaintiff acknowledges in his briefing that he has received benefits from his workers' compensation claim. (Doc. 122-2, ¶ 3).

*Illinois* law governs the question of whether such immunity applies, and that the Illinois Workers' Compensation Act, 820 ILCS 305/11, does not immunize employers like McCann from such claims. Thus, a threshold issue is whether Missouri or Illinois workers' compensation law applies.

### 1. Choice of Law

In this diversity action, this Court must follow Missouri's choice of law rules to determine which state's law applies. *Wolfley v. Solectron USA, Inc.*, 541 F.3d 819, 823 (8th Cir. 2008). Before applying the Missouri's choice of law rules, the Court "must first determine whether a conflict exists." *Prudential Ins. Co. of. Am. v. Kamrath*, 475 F.3d 920, 924 (8th Cir. 2007). Here, there appears to be no real dispute that there is a conflict. The relevant provision of the Missouri Workers' Compensation Law provides, "Every employer subject to the provisions of this chapter shall be liable, irrespective of negligence, to furnish compensation under the provisions of this chapter for personal injury or death of the employee by accident arising out of and in the course of the employee's employment, and shall be released from all other liability whatsoever, whether to the employee or any other person." Mo. Rev. Stat. § 287.120.1 (2010).[2] The Missouri Supreme Court has held that this statute "immunizes" the employer from liability for contribution claims brought by third parties who are liable to the injured plaintiff-employee. *State ex rel. Maryland Heights Concrete Contractors, Inc. v. Ferriss*, 588 S.W.2d 489, 490 (Mo. 1979).

In contrast, the Illinois Workers' Compensation Act, 820 ILCS 305/1 *et seq.*, limits an employer's liability to an employee but does not bar third-party contribution claims against the employer. When an employee sues a third party, the third party "may file a third-party suit

---

[2] This was the version of the statute in effect as of the date of Plaintiff's injury in 2011 and is therefore the version of the statute that applies here. *See Tillman v. Cam's Trucking, Inc.*, 20 S.W.3d 579, 585-86 (Mo. Ct. App. 2000).

against the employer for 'contribution' toward the employee's damages." *Virginia Sur. Co. v. Northern Ins. Co. of New York*, 866 N.E.2d 149, 154 (Ill. 2007) (citing 740 ILCS 100/1 *et seq.*). The Illinois courts have "attempted to balance the competing interests of the employer, as a participant in the workers' compensation system, and the equitable interests of the third-party defendant in not being forced to pay more than its established fault," by permitting contribution claims but holding that the employer's maximum liability in a third-party contribution suit is limited to its liability to its employee under the Workers' Compensation Act. *Id.* at 154-55 (citing *Kotecki v. Cyclops Welding Corp.*, 585 N.E.2d 1023, 1028 (Ill. 1991)).[3] Because Missouri law immunizes employers from third-party contribution claims and Illinois law does not, there is a conflict, and the Court must decide which state's law applies.

When addressing choice-of-law issues, Missouri courts apply the "most significant relationship test" established by the Restatement (Second) of Conflicts of Law (the "Restatement"). *Wolfley*, 541 F.3d at 823; *Kennedy v. Dixon*, 439 S.W.2d 173, 184 (Mo. 1969). "Under this test, the identity of the state having the most significant relationship will depend upon the nature of the cause of action and upon the particular legal issue in dispute." *Wolfley*, 541 F.3d at 823. For personal injury actions, the rights and liabilities of the parties are determined by the local law of the state where the injury occurred "unless, with respect to the particular issue, some other state has a more significant relationship under the principles stated in [Restatement] § 6 to the occurrence and the parties.'" *Wolfley*, 541 F.3d at 823 (quoting *Dorman*

---

[3] Both Missouri and Illinois law provide for exceptions or modifications to these rules in certain situations, such as where the employer owes a third party an independent contractual obligation to indemnify the third party or where the employer has waived the cap on contribution claims. *See, e.g.*, *Ferriss*, 588 S.W.2d at 490; *Virginia Sur. Co.*, 866 N.E.2d at 155. It is possible that some of these exceptions and modifications may affect some of the claims against McCann. However, that question has not been fully briefed and need not be resolved in order to address the present motions.

4

*v. Emerson Elec. Co.,* 23 F.3d 1354, 1358 (8th Cir.1994)); *see also* Restatement (Second) of Conflicts of Law, §145(1).

The principles stated in Restatement § 6 include:

(a) the needs of the interstate and international systems;
(b) the relevant policies of the forum;
(c) the relevant policies of other interested states and the relative interests of those states in the determination of the particular issue;
(d) the protection of justified expectations;
(e) the basic policies underlying the particular field of law;
(f) certainty, predictability, and uniformity of result; and
(g) the ease in the determination and application of the law to be applied.

Restatement § 6(2); *see also In re Nuvaring,* 957 F. Supp. 2d at 1114; *Wolfley*, 541 F.3d at 823.

The Court does not apply the principles articulated in Restatement § 6 in a vacuum. Rather, those principles must be evaluated in light of the following contacts which have been identified in § 145(2) of the Restatement as relevant to the most significant relationship test: (a) the place where the injury occurred, (b) the place where the conduct causing the injury occurred, (c) the domicil, residence, nationality, place of incorporation and place of business of the parties, and (d) the place where the relationship, if any, between the parties is centered. *Wolfley*, 541 F.3d at 823-24 (citing Restatement (Second) of Conflict of Laws §145(2)); *see also In re Nuvaring*, 957 F. Supp. 2d 1110, 1113 (E.D. Mo. 2013) (citing *Natalini v. Little*, 185 S.W.3d 239, 248-50 (Mo. Ct. App. 2006); *Goede v. Aerojet Gen. Corp.*, 143 S.W.3d 14, 25 nn.7 , & 8, 26 (Mo. Ct. App. 2004)). Section 145 of the Restatement and Missouri law further require that the Restatement § 145(2) contacts be evaluated according to their relative importance with respect to the particular issue. Restatement (Second) of Conflict of Laws §145(2); *see also Nuvaring*, 957 F. Supp. 2d at 1113.

Indeed, under the principle of dépeçage, the Court is not bound to decide all issues in the case under the local law of one state. As such, the most significant relationship test "is applied

individually to each particular issue." *In re Nuvaring*, 957 F. Supp. 2d at 1113; *Glasscock v. Miller*, 720 S.W.2d 771, 774-775 & n.1 (Mo. Ct. App. 1986) (noting that Missouri follows the doctrine of dépeçage); Restatement § 145 cmt. d (1971) ("The courts have long recognized that they are not bound to decide all issues under the local law of a single state."). In sum, under Missouri conflict-of-law rules, the law of the state where the injury occurred does not govern a particular issue if, after evaluating the Restatement § 6 principles in light of § 145(2) contacts, the Court determines that another state has a more significant relationship to that issue.

### 2. Illinois Law Governs The Issue Of Whether McCann Is Immune From Third Party Claims

The issue before the Court is whether state workers' compensation law immunizes McCann from Gullet, McDonough and McGrath's third party claims. On that issue, the relevant § 145(2) contacts are primarily with Illinois. McCann is an Illinois company, Plaintiff is an Illinois resident, and one of the three claimants is from Illinois. The relationship that gives rise to the question of whether McCann's liability is limited by workers' compensation law is centered in Illinois: it is an employment relationship between an Illinois resident (Plaintiff) and an Illinois company (McCann), in which the employer paid benefits under the Illinois workers' compensation system. Although the injury occurred in Missouri, that fact is of less relevance in assessing which state's workers' compensation law applies to contribution and indemnity claims.[4]

The § 6 factors most relevant here, viewed in light of the § 145(2) contacts, also strongly favor Illinois. Factors (b) and (c), the relevant policies and interests of the states in determining

---

[4] The place where the conduct causing the injury occurred does not favor either Missouri or Illinois, because the case involves claims of negligent conduct that likely occurred in both Missouri (such as allegations of negligent in unloading the concrete vault) and negligent conduct that likely occurred in Illinois (such as allegations that Illinois entities such as McDonough failed to design proper lifting plans for the vaults).

the particular issue, favor Illinois. Missouri workers' compensation law reflects a policy under which Missouri protects the interests of both its employers and its employees by making employers liable to employees regardless of negligence, but then immunizing employers from liability to third parties. *See Ferriss*, 588 S.W.2d at 490. Although it is clear that Missouri has a policy interest in applying its employer-protective provisions to Missouri employers who pay employees under Missouri's workers' compensation law and are otherwise subject to that law, it does not appear that Missouri has any interest in applying those protections to *Illinois* employers such as McCann, who have no apparent relationship to the Missouri workers' compensation system. Illinois law, on the other hand, reflects Illinois's policy interest in providing some protection to employers while also protecting the interest of third parties in an equitable apportionment of damages, by permitting third parties to make contribution claims against employers up to a capped amount. *See Virginia Sur. Co.* 866 N.E.2d at 154-55; *see also Ill. Tool Works v. Indep. Machine Corp.*, 802 N.E.2d 1128, 1231 (Ill. Ct. App. 2003) (noting that Illinois's contribution scheme promotes the policy of "encourag[ing] the equitable apportionment of damages"). Illinois has a clear interest in applying its preferred policies to the Illinois employer and Illinois employee in this action, as well as to the Illinois third party who has brought contribution claims (McDonough).

Factor (d) (the protection of justified expectations), and factor (f) (predictability and uniformity) also favor Illinois. McCann, an Illinois employer, would expect that Illinois workers' compensation law and its applicable limitations on liability would apply to claims brought by an Illinois employee, and its workers' compensation policy premiums presumably reflected that expectation. Plaintiff, an Illinois employee, also likely expected that the workers' compensation law of Illinois would apply (and, indeed, he sought and received compensation under its

7

provisions). Third parties in Illinois and elsewhere who decide to deal with an Illinois employer would also likely expect that the employer would be subject to the workers' compensation law of Illinois, which permits contribution claims. For these reasons, applying Illinois law is consistent with the parties' expectations and promotes predictable and uniform results.

Plaintiff's arguments for applying Missouri law are directed to Missouri's contacts with the case as a whole: he points out that the injury occurred in Missouri, that Ameren UE's purchase order for the vaults was billed to Ameren UE in Missouri, that the purchased vaults were delivered in Missouri, that McGrath's contract with Ameren UE took place in Missouri, that McGrath's subcontract with Rich Gullet took place in Missouri, that most of Plaintiff's medical care took place in Missouri, that McGrath's subcontract with Rich Gullet specifies that disputes shall be decided in Missouri, that McGrath's contract with Ameren specifies that disputes shall be governed by Missouri, and that Missouri is the forum state. However, those Missouri contacts have little or no relevance to the question of whether state workers' compensation law immunizes McCann from liability for third-party claims.

The parties have not cited, and the Court has not found, any cases addressing the specific choice of law question at issue here. However, Missouri courts addressing the related question of whether an employer can obtain reimbursement from third-party tortfeasors have held that question is determined by the law of the state whose workers' compensation system was invoked by the employee. *See Langston v. Hayden*, 886 S.W.2d 82, 85 (Mo. Ct. App. 1994) ("When, as here, workers' compensation benefits are claimed in one state for an accident which occurred in another, the law generally states that the question of whether and to what extent the employer or its insurer is entitled to subrogation or reimbursement is to be determined according to the provision of the workers' compensation law under which the compensation for the employee's

injury was paid."); *Perry v. Carter*, 620 S.W.2d 50, 52 (Mo. Ct. App. 1981) (noting that the "usual rule" is that "the reimbursement rights of a workmen's compensation carrier are governed by the law of the state whose Workmen's Compensation Act was invoked by the claimant in obtaining benefits" and applying Georgia law to the question of whether an employer had a right to reimbursement in a case involving an injury in Missouri). It makes sense that just as McCann's right to reimbursement from third-party tortfeasors should be determined by the Illinois Workers' Compensation Act, McCann's liability to third-party tortfeasors should be determined by that Act.

Similarly, courts outside Missouri have held that the state workers' compensation law that was invoked by the employee determines whether an entity is immune from suit by the employee. *See Robidoux v. Mulholland*, 642 F.3d 20, 25-28 (1st Cir. 2011) (holding that Massachusetts had the most significant relationship to this issue despite the fact that the plaintiff's injury had occurred in Rhode Island, because the plaintiff was a Massachusetts resident who received benefits from a Massachusetts workers' compensation policy for an injury he suffered while employed by a Massachusetts company); *Ellis v. Trustmark Builders, Inc.*, 625 F.3d 222, 225-29 (5th Cir. 2010) (holding that Alabama had the most significant relationship to this issue despite the fact that the plaintiff's injury had occurred in Mississippi, "in large part because the parties have already engaged Alabama's workers compensation scheme"). *See also* Restatement § 184, cmt. b. ("A person who accepts an award under the workmen's compensation statute of a given state may justly be held bound by the provisions of that statute insofar as immunity from tort and wrongful death liability is concerned.").

In sum, after review of the relevant Restatement factors[5] and the related case law, the Court finds that Illinois has a more significant relationship than does Missouri to the issue of whether state workers' compensation law immunizes McCann from liability for third-party contribution and indemnity claims. Therefore, Illinois law applies to this issue.

### 3. *Gullet, McDonough and McGrath Have Asserted Viable Third Party Claims Against McCann Under Illinois Law*

Plaintiff's argument for striking and dismissing the claims against McCann rests solely on his contention that Missouri's Workers' Compensation Law immunizes McCann from liability for third-party contribution and indemnity claims. To survive a motion to dismiss under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "Where the allegations show on the face of the complaint that there is some insuperable bar to relief, dismissal under Rule 12(b)(6) is appropriate." *Benton v. Merril Lynch & Co.*, 524 F.3d 866, 870 (8th Cir. 2008). Rule 12(f) provides that a court "may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." However, "Striking a party's pleading . . . is an extreme and disfavored measure." *BJC Health Sys. v. Columbia Cas. Co*., 478 F.3d 908, 917 (8th Cir. 2007) (citing *Stanbury Law Firm, P.A. v. IRS*, 221 F.3d 1059, 1063 (8th Cir. 2000)).

As discussed above, Illinois law applies to this issue, and Illinois law generally permits the third party claims asserted by Gullet, McDonough and McGrath. Plaintiff offers the Court no basis whatsoever for striking or dismissing any of the claims under Illinois law. Thus, Plaintiff's

---

[5] The Court has considered the factors not specifically discussed but finds that they either have little relevance to this issue or do not significantly favor either Missouri or Illinois.

motions to strike and dismiss the claims will be denied. The Court need not reach the claimants' various alternative arguments in opposition to Plaintiff's motions.

### B. Motions for Separate Trials

Plaintiff also requests that the Court order separate trials for the claims against McCann. Under Rule 42(b), "For convenience, to avoid prejudice, or to expedite and economize, the court may order a separate trial of one or more separate issues, claims, crossclaims, counterclaims, or third-party claims." Fed. R. Civ. P. 42(b). The trial court has broad discretion in determining whether such bifurcation is appropriate. *Rikard v. U.S. Auto Protection, LLC*, No. 4:11-CV-1580-JCH, 2013 WL 5538726, at *2 (E.D. Mo. Oct. 8, 2013)

Plaintiff argues that the confusion and complexity introduced by the large number of cross-claims, counterclaims, and third-party claims in this case prejudice him and unnecessarily burden the orderly processing of this case. The Court has already denied a request from Plaintiff to sever several of the claims in this case on similar grounds. (Doc. 102). Although there are now some additional claims pending in the case, the Court's reasoning in its prior order stands. Plaintiff has failed to show any real prejudice from trying these claims together, and the Court finds that trying the claims separately would result in a greater likelihood of jury confusion and an unnecessary expenditure of judicial resources.

### III. CONCLUSION

For all of the above reasons,

**IT IS HEREBY ORDERED** that Plaintiff's motions to dismiss, strike, and/or hold separate trials on the claims against McCann (Docs. 122-1, 122-2, and 126-1), are **DENIED**.

Dated: March 4, 2015.                /s/ Shirley Padmore Mensah
                                     SHIRLEY PADMORE MENSAH
                                     UNITED STATES MAGISTRATE JUDGE