UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| FRED HARBISON, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) No. 4:13-CV-1138-SPM |
| | ) |
| RICH GULLET AND SONS, INC., et al, | ) |
| | ) |
| Defendants. | ) |

## **MEMORANDUM AND ORDER**

Plaintiff Fred Harbison ("Plaintiff") and third-party defendants McCann Concrete Products, Inc. ("McCann"), McDonough-Whitlow, P.C. ("McDonough"), and Union Electric Company, d/b/a Ameren UE, d/b/a Ameren Missouri ("Ameren") (collectively, the "Moving Parties") have filed a Joint Motion to Dismiss in which they ask the Court to dismiss several pending claims pursuant to the terms of a Settlement Agreement. (Doc. 160). The remaining parties in the action filed a response stating that they do not object to the motion. (Doc. 168). For the following reasons, the motion will be granted.

I.  **BACKGROUND**

On October 20, 2011, Plaintiff was delivering a heavy piece of concrete vault to a substation owned by Ameren in St. Louis County, Missouri, when the concrete vault section fell on his truck and injured him during the unloading process. Plaintiff has asserted negligence claims against Rich Gullet and Sons, Inc. ("Gullet"), the sub-contractor responsible for unloading the vault, and McGrath & Associates, Inc. ("McGrath"), the general contractor for the Ameren site. Plaintiff also filed a workers' compensation claim against his employer, McCann. The two defendants in this action, Gullet and McGrath, have since become enmeshed in a

1

procedural web of cross-claims and counterclaims with third-party defendants Ameren, McDonough (the company that provided engineering services with regard to the concrete vault at issue), and McCann, each seeking contribution and indemnification should Plaintiff ultimately prevail.

On April 22, 2015, Plaintiff, Plaintiff's wife, McCann, and McDonough (the "Settling Parties") reached a settlement (the "Settlement Agreement") under which Plaintiff agreed to discharge McCann and McDonough from liability for his injuries in exchange for $40,000 and $10,000, respectively.[1] (Doc. 160 ¶¶ 11-12). McCann and McDonough also agreed to dismiss their claims against each other. (*Id.* ¶ 12). The Settling Parties notified Gullet, McGrath and Ameren of the Settlement Agreement and provided them each with a copy on April 24, 2015. (*Id.* ¶ 13). Ameren responded that it had no objection and joined the instant motion. (*Id.* ¶ 15). Gullet and McGrath (collectively, the "Non-Settling Parties"), however, responded on May 18 that they would neither consent nor object to the Settlement Agreement. (*Id.* ¶ 16).

On May 22, 2015, the Moving Parties filed the instant motion, asking the Court to (1) dismiss with prejudice all pending claims for contribution against McCann and McDonough, (2) dismiss with prejudice McDonough's contractual indemnity claim against McCann, and (3) dismiss without prejudice McDonough's contribution claim against Ameren. On June 19, 2015, the Non-Settling Parties responded with a statement that they would not object to the instant motion. (Doc. 168).

---

[1] Although Plaintiff does not currently have any claims against McCann or McDonough in the present action (such claims would divest this Court of its subject-matter jurisdiction by destroying complete diversity), he had apparently apprised them of his eventual intention to sue both in an appropriate forum. (Doc. 160 Ex. 1 at 3). Plaintiff had also previously added a claim against McDonough to this suit (Doc. 22), but it was voluntarily dismissed in order to preserve the Court's subject-matter jurisdiction under 28 U.S.C. § 1332. (Doc. 102).

## II. DISCUSSION

The Court will address separately (A) the Moving Parties' requests to dismiss the pending contribution claims against McCann and McDonough and (B) the Moving Parties' requests to dismiss McDonough's claims against McCann and Ameren.

### A. Contribution Claims Against McCann and McDonough

The Moving Parties first ask that McCann and McDonough be discharged from all contribution liability based on the terms of the Settlement Agreement.[2] This would mean dismissing Gullet's crossclaims against McCann and McDonough (Docs. 114 and 115), as well as McGrath's crossclaim against McCann (Doc. 118) and counterclaim against McDonough (Doc. 119). Neither Gullet nor McGrath objects. Although the Moving Parties have termed the instant motion a "Joint Motion to Dismiss," I find that the motion is properly construed as one for summary judgment. *See Tiny Tot Land v. Spalding & Evenflo Cos. Inc.*, 242 F.3d 830 (8th Cir. 2001). Summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Hill v. Walker*, 737 F.3d 1209, 1216 (8th Cir. 2013).

To resolve this motion, the Court must determine whether the Settlement Agreement erases McCann's and McDonough's contribution liability for matters pertaining to this suit. There is some question about whether Illinois law or Missouri law governs this issue. However, the Court need not decide that question, because the Settlement Agreement extinguishes McCann's and McDonough's contribution liability under either state's law.

---

[2] The Moving Parties have introduced the Settlement Agreement into the record. (Doc. 160 Ex. 1). By citing to the Settlement Agreement, the Moving Parties carried their burden under Rule 56(c)(1)(A) to show that there is no genuine dispute of fact as to the existence of a settlement between McCann, McDonough and Plaintiff. Since the Non-Settling Parties did not object, there is "no genuine dispute" as to the material fact of whether or not there is a settlement in place. Fed. R. Civ. P. 56(a).

3

### *1. Illinois Law*

The Illinois Contribution Act provides, in relevant part:

> (c) When a release or covenant not to sue or not to enforce judgment is given in good faith to one or more persons liable in tort arising out of the same injury or the same wrongful death, it does not discharge any of the other tortfeasors from liability for the injury or wrongful death unless its terms so provide but it reduces the recovery on any claim against the others to the extent of any amount stated in the release or the covenant, or in the amount of the consideration actually paid for it, whichever is greater.
>
> (d) **The tortfeasor who settles with a claimant pursuant to paragraph (c) is discharged from all liability for any contribution to any other tortfeasor.**

740 ILCS 100/2 (emphasis added). The Contribution Act promotes the twin policies of (1) encouraging settlements and (2) equitably apportioning damages among tortfeasors. *Johnson v. United Airlines*, 784 N.E.2d 812, 821 (Ill. 2003). Under the Contribution Act, only a "good faith" settlement extinguishes the contribution liability of settling tortfeasors. *Id.* at 818. Although there is no "single, precise formula for determining what constitutes 'good faith' within the meaning of the Contribution Act that would be applicable in every case," the requirement is not met when "the settling parties engaged in wrongful conduct, collusion, or fraud," or when a settlement "conflicts with the terms of the Act or is inconsistent with the policies underlying the Act." *Id.* (citations omitted).

Illinois courts employ a burden-shifting framework in analyzing whether a settlement was negotiated in good faith. *Johnson*, 784 N.E.2d at 820. First, "the settling parties carry the initial burden of making a preliminary showing of good faith." *Id.* In order to meet this burden, the settling parties must show (at a minimum) that a legally valid settlement agreement exists, although more may be necessary in a given case to determine whether the settlement "is fair and reasonable in light of the policies underlying the Contribution Act." *Id.* Once that burden is

satisfied, the burden shifts to the party challenging the settlement to "prove the absence of good faith by a preponderance of the evidence." *Id.*

Here, the Settling Parties have satisfied their burden of making a preliminary showing of good faith by introducing into the record the Settlement Agreement, under which McCann will pay Plaintiff $40,000 and McDonough will pay Plaintiff $10,000 in exchange for a release of liability. These are more than nominal amounts, and the Settling Parties set forth in their motion reasonable explanations for these amounts. (Doc. 160 ¶¶ 18-20). The Settling Parties further assert that the Settlement Agreement was made at arm's length and with experienced Plaintiff's counsel. (*Id.* ¶ 17). The burden then shifts to the Non-Settling Parties to show by a preponderance of the evidence that the Settlement Agreement was not entered into in good faith. However, the Non-Settling Parties do not object to the settlement and do not argue that the settlement was made in bad faith, nor does the Court find any indication of bad faith. The Court concludes that the Settlement Agreement was entered into in good faith, and that under Illinois law, McDonough's and McCann's contribution liability is extinguished and all contribution claims against them must be dismissed. *See Johnson*, 784 N.E.2d 812 (affirming dismissal of contribution claim pursuant to 740 ILCS 100/2 because settlement between defendant and claimant was made in good faith).

### 2. Missouri Law

The outcome would be the same under Missouri law. Missouri's Contribution statute provides, in relevant part:

> **When an agreement by release, covenant not to sue or not to enforce a judgment is given in good faith to one of two or more persons liable in tort for the same injury or wrongful death, such agreement shall not discharge any of the other tort-feasors for the damage unless the terms of the agreement so provide**; however such agreement shall reduce the claim by the stipulated amount of the agreement, or in the amount of consideration paid,

5

whichever is greater. **The agreement shall discharge the tort-feasor to whom it is given from all liability for contribution or noncontractual indemnity to any other tort-feasor.**

Mo. Rev. Stat § 537.060 (emphasis added). This statute furthers the policy of encouraging settlement by permitting "alleged tort-feasors to buy their peace by good faith settlement with the claimant." *Lowe v. Norfolk & W. Ry. Co.*, 753 S.W.2d 891, 891, 894-95 (Mo. 1988); *see also Tiny Tot Land*, 242 F.3d at 833 (quoting *Lowe*, 753 S.W.2d at 895). The good-faith requirement of section 537.060 applies only to the claimant; it does not require the Court to "delv[e] into the intent of a joint tort-feasor who settles, even though the intent may be to avoid contribution." *State ex rel. Sharma v. Meyers*, 803 S.W.2d 65, 68 (Mo. Ct. App. 1990).

As discussed above with respect to Illinois law, the Court finds no indication that Plaintiff did not act in good faith. The Settlement Agreement therefore prevents McCann and McDonough from being subject to contribution liability under Missouri law, and all contribution claims against them must be dismissed. *See Lowe*, 753 S.W.2d 891 (affirming dismissal of third-party contribution claims under Mo. Rev. Stat. § 537.060 pursuant to a settlement).

### B. McDonough's Crossclaims Against McCann and Ameren

The Moving Parties also ask the Court to dismiss with prejudice McDonough's contractual indemnity crossclaim against McCann (Doc. 109) and to dismiss without prejudice its contribution crossclaim against Ameren (Doc. 109). The Court construes this as a motion under Rule 41(a)(2) for voluntary dismissal, which the Court may grant "on terms that the court considers proper." Fed. R. Civ. P. 41(a)(2). In view of the fact that the Non-Settling Parties have not objected to the instant motion, the Court will grant it.

### III. CONCLUSION

For the foregoing reasons, the Court finds that McCann and McDonough are entitled to judgment as a matter of law based on the terms of the Settlement Agreement. The Court also finds that McDonough's contractual indemnity crossclaim against McCann Concrete Products and McDonough's crossclaim against Ameren should be dismissed. Accordingly,

**IT IS HEREBY ORDERED** that the Joint Motion to Dismiss McCann Concrete Products, Inc., McDonough-Whitlow, P.C. and Union Electric Company, d/b/a Ameren UE, d/b/a Ameren Missouri (Doc. 160) is **GRANTED**.

**IT IS FURTHER ORDERED** that all pending contribution claims in this action against McCann Concrete Products, Inc. (Docs. 114, 118) are **DISMISSED with prejudice**.

**IT IS FURTHER ORDERED** that all pending contribution claims in this action against McDonough-Whitlow, P.C. (Docs. 115, 119) are **DISMISSED with prejudice.**

**IT IS FURTHER ORDERED** that McDonough's contractual indemnity crossclaim against McCann Concrete Products, Inc. (Doc. 109) is **DISMISSED with prejudice.**

**IT IS FURTHER ORDERED** that McDonough-Whitlow, P.C.'s crossclaim against Union Electric Company, d/b/a Ameren UE, d/b/a Ameren Missouri (Doc. 109) is **DISMISSED without prejudice.**

Dated this <u>13th</u> day of <u>July</u>, 2015

<u>/s/ Shirley Padmore Mensah</u>
SHIRLEY PADMORE MENSAH
UNITED STATES MAGISTRATE JUDGE